**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| APEX ENERGY (PA), LLC, a Delaware limited liability company, | CIVIL DIVISION NO. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| PENN TOWNSHIP, PENN TOWNSHIP ZONING HEARING BOARD, PENN TOWNSHIP BOARD OF COMMISSIONERS, | |
| Defendants. | |

## COMPLAINT OF APEX ENERGY (PA) ENERGY LLC

The Plaintiff, Apex Energy (PA), LLC, ("Apex"), by its attorneys Reed Smith, LLP, sets forth the following as its Complaint against the Defendants, Penn Township Zoning Hearing Board (the "Board"), Penn Township Board of Commissioners ("Commissioners"), and Penn Township (collectively, with the Board and Commissioners, the "Township").

### NATURE OF THE ACTION

1.      This case arises from Apex's legitimate and lawful efforts over nearly two (2) years to develop, explore, and produce natural gas and other hydrocarbons within the Marcellus shale formation on certain leased properties situate within the limits of the Penn Township, a First-Class Township within Westmoreland County, Pennsylvania, through the construction, drilling, completion, and placing into production of seven (7) "unconventional" well-pad sites.

2.      For all times relevant to this Complaint, Apex's proposed use is expressly permitted both by the Oil and Gas Act, 58 Pa C.S.A. §§ 3201, *et seq*. ("Oil and Gas Act") and as a special exception under the Township's Zoning Ordinance.

3.     Through the misuse of governmental power and unlawful actions taken by the Township in violation of, *inter alia*, the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution, Apex has now been deprived of its lawful right to develop two (2) unconventional well-pad sites, known as the Beattie Central Pad-37 and the Draftina Central Pad-31.

4.     Moreover, the Township's unlawful actions immediately and imminently jeopardize Apex's remaining five (5) pending applications for special exception before the Board and six (6) applications for preliminary land development plan before the Commissioners (collectively "Pending Applications").   The Pending Applications seek to permit five (5) additional unconventional well-pad sites known as the White Central Pad-30, the Numis Pad, the Backus Pad, the Deutsch Pad, and the Drakulic Pad ("Additional Pad Sites").

5.     The Township's actions were intended to, and did deprive Apex of, the value of and lawful right to use its property, and the right to develop and produce natural gas on its property in accordance with its investment-backed expectations.

6.     Through their actions, as set forth below, the Township deprived Apex of its rights of equal protection under the law, and substantive and procedural due process, as well as interfered with protected property interests, all guaranteed under the United States Constitution in violation of 42 U.S.C. § 1983.

## PARTIES

## I.     The Plaintiff

7.     Plaintiff Apex is a limited liability company organized pursuant to the laws of the State of Delaware and has its principal place of business at 6041 Wallace Rd. Extension, Suite 100, Wexford, Pennsylvania 15090.

II.     **The Defendants**

8.     Defendant Penn Township is located in Westmoreland County, Pennsylvania with a principal place of business at 2001 Municipal Court, Harrison City, Pennsylvania 15636-1349.

9.     Defendant Board was created pursuant to the authority under Section 901 of the Pennsylvania Municipalities Planning Code, 53 P.S. §§ 10101, *et seq*. ("MPC"), and the Township's Zoning Ordinance.  The Board maintains its offices at 2001 Municipal Court, Harrison City, Pennsylvania 15636-1349.

10.     Defendant Commissioners is the governing body of the Township which conducts business at 2001 Municipal Court, Harrison City, Pennsylvania 15636-1349.

**JURISDICTION AND VENUE**

11.     The Court has jurisdiction over this action because Apex's claims arise, *inter alia*, under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and jurisdiction is conferred by 28 U.S.C. § 1331, 18 U.S.C. § 1964(a), 42 U.S.C. § 1983, and 18 U.S.C. §§ 1341, 1343, 1346, and 1951 and applicable principles of supplemental jurisdiction under 28 U.S.C. § 1367(a).  Apex also seeks declaratory judgment and equitable relief pursuant to 28 U.S.C. §§ 2201(a) and 2202.

12.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Apex's claims arise under, *inter alia*, federal law, and involve substantial questions of federal law under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to and Article I, § 10 of the United States Constitution.

13.     The Court has supplemental jurisdiction over Apex's state law claims because the claims are so related to the federal claims within the Court's original jurisdiction that

Apex's state law claims form part of the same case or controversy under Article III of the United States Constitution.

14.     The Court's jurisdiction is not precluded by immunity in that the Township's governmental immunity to suit and liability is specifically, clearly, and unambiguously waived and abolished with respect to Apex's claims.

15.     The Court's jurisdiction is not precluded by immunity in that the Township has no governmental immunity to suit liability against Apex's claims for violation of rights and denial of due process in violation of 42 U.S.C. § 1983.

16.     The Court has personal jurisdiction over the Township and venue is proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b) because:  (i) the Township is found in, has agents in, or transacts its business and affairs in this District; and (ii) a substantial part of the events or omissions giving rise to the claims for relief occurred within this Court's jurisdiction.

## FACTUAL BASIS FOR THE COMPLAINT

**(A)     Apex Has Successfully Drilled, Completed, and Put into Production Unconventional Oil and Gas Wells in Westmoreland County and the Township.**

17.     Apex is an experienced natural gas exploration and production company. Apex holds approximately 30,000 acres under lease in Westmoreland County for the development, exploration, and production of natural gas found in the Marcellus shale formation.

18.     Westmoreland County and the Township are situated in the Marcellus shale formation.  As of the most recent reporting period, there are approximately one hundred seventy-five (175) unconventional oil and gas wells drilled and producing natural gas from the Marcellus Shale in Westmoreland County.

19.     The Marcellus shale is a deep geological formation covering approximately 95,000 square miles of Ohio, Pennsylvania, West Virginia, and New York.  The

Marcellus shale formation is estimated to hold approximately five hundred (500) trillion cubic feet of gas.  The formation is found at depths of between 4,000 and 8,500 feet.  In Westmoreland County, the Marcellus shale formation is found at a depth of approximately 8,000 feet.

20.     Pursuant to the Oil and Gas Act, the Commonwealth of Pennsylvania permits the exploration, drilling, completion, and production of unconventional wells to develop Marcellus shale assets and the Pennsylvania Department of Environmental Protection ("DEP") has adopted comprehensive regulations related to the operational processes of drilling and completion of unconventional wells.  There are well over 10,000 unconventional wells drilled and producing in Pennsylvania.

21.     In thirty (30) years in the industry, Apex's chief operating officer has supervised the construction, drilling, and completion of over six hundred (600) unconventional wells, including the five (5) unconventional wells constructed, drilled, completed, and placed into production by Apex in Pennsylvania.

22.     Apex has directly constructed, drilled, completed, and placed into production four (4) unconventional wells in Westmoreland County, including the two (2) producing unconventional wells at the Quest Central Pad-7, which is situate in the Township.

23.     Apex has drilled a fifth unconventional well in Armstrong County and operates approximately thirty (30) conventional natural gas wells.

24.     Apex has had no reportable spills in the history of the company; no violations have issued from either state or federal oversight agencies to Apex for operational issues related to the construction, drilling, completion, or production of any unconventional well, including the Quest Central Pad-7 within the Township; and in a routine inspection of Apex's Armstrong County unconventional well, a DEP inspector stated that "I would like to commend

Apex for the very neat appearance and safe set up of everything staged and set up on this well pad.  It is one of the nicest that I have seen."

**(B)     Apex Holds Property Rights in the Property Subject to this Suit.**

25.     On November 5, 2014, Apex entered into a certain *Farmout Agreement* with Dominion Transmission, Inc. ("Dominion"), under which Apex leases the rights to produce gas from the Marcellus shale formation along with associated surface rights in Westmoreland County.  A Memorandum of the Farmout Agreement is recorded with the Office of Recorder of Deeds in and for Westmoreland County ("Recorder of Deeds") at Instrument No. 201506110018699.  A true and accurate copy of the Farmout Agreement is attached as **Exhibit A** to the Complaint.

26.     Apex leases the rights from Dominion to produce gas under the Farmout Agreement with the expectation of realizing a return on its investment and had a reasonable investment-backed expectation of gaining profit from the drilling, completion, and production of unconventional wells situate on the property where Apex holds the rights to produce natural gas.

27.     Apex's investment-backed expectation of gaining profit from the development of unconventional oil and gas wells was reasonable because the highest and best use of the right to produce natural gas from the Marcellus shale formation posed no unreasonable risk to the Township or public at large as determined by the Pennsylvania legislature in enacting the Oil and Gas Act and the Commissioners by allowing the use as a special exception under the Penn Township Zoning Code and Pending Ordinance (defined below).  Moreover, Apex satisfies all objective requirements for developing and operating unconventional oil and gas wells within the Township's Mineral Extraction Overlay District ("MEO District").

28.     As successor-in-interest to Dominion under the Farmout Agreement, Apex possesses the right to explore, develop, and produce natural gas from the Marcellus shale under the following leases:

(a)     The Clayton Lease recorded at Deed Book Volume 1025, Page 120 in the Recorder of Deeds and identified as JL000380 on Exhibit A-9 of the Farmout Agreement; the Kepple Lease recorded at Deed Book Volume 508, Page 86, with the Recorder of Deeds and identified as JL000377 on Exhibit A-9 of the Farmout Agreement; the Kozain Lease recorded at Deed Book Volume 1395, Page 118, with the Recorder of Deeds and identified as JL000501 on Exhibit A-11 of the Farmout Agreement; and the Klingensmith Lease recorded at Deed Book Volume 1382, Page 569, with the Recorder of Deeds and identified as JL000428 on Exhibit A-10 of the Farmout Agreement, (collectively, the leases shall be referred to as the "Beattie Central Pad-37 Leases");

(b)     The Draftina Lease recorded at Deed Book Volume 1686, Page 423, with the Recorder of Deeds and identified as JL000702 on Exhibit A-15 of the Farmout Agreement; and

(c)     The Beck Lease recorded at Deed Book Volume 586, Page 272, with the Recorder of Deeds and identified as JL000374 on Exhibit A-9 of the Farmout Agreement and the Geiger Lease recorded at Deed Book Volume 3249, Page 487, with the Recorder of Deeds and identified as JL000735 on Exhibit A-16 of the Farmout Agreement.  Collectively, the leases shall be referred to as the "White Central Pad-30 Leases."

29.     The property Apex leases under the Beattie Central Pad-37 Leases, the Draftina Lease, and the White Central Pad-30 Leases is situated in the Township within the MEO District.

30.     Apex is the successor-in-interest to that certain *Oil and Gas Lease*, as amended and ratified, by and between W.H. Holsinger, et ux., and Trafford Oil & Gas Company ("Holsinger Lease").  The Holsinger Lease was recorded with the Recorder of Deeds on April 3, 1932, at Deed Book Volume 793, Page 333.

31.     Under the Holsinger Lease, Apex possesses the right to "drilling and operating for oil, gas and water," under ten (10) tax map parcels within the Township in the MEO District.

32.     Apex is the successor-in-interest to that certain *Oil and Gas Lease*, as amended and ratified, by and between S.P. Whitehead, et ux., and Trafford Oil & Gas Company ("Whitehead Lease").   The Whitehead Lease was recorded with the Recorder of Deeds on June 26, 1922, at Deed Book Volume 793, Page 58.

33.     Under the Whitehead Lease, Apex possesses the right to "drilling and operating for oil, gas and water," under a one hundred thirty-six (136)-acre tax map parcel within the Township in the MEO District.

34.     Apex is the successor-in-interest to Dorso, LP of that certain *Oil and Gas Lease and Surface Site Agreement* with John Z. Drakulic and Mildred Drakulic Estate, John Jr., Executor of Estate ("Drakulic Lease").   A memorandum of the Drakulic Lease was recorded with the Recorder of Deeds on June 25, 2014 at Instrument 201406250019575.

35.     Under the Drakulic Lease, Apex possesses the right "to explore, develop, produce, and market oil and gas" from seven (7) tax map parcels within the Township in the MEO District.

36.     Apex is the successor-in-interest to Dorso, LP of that certain *Oil and Gas Lease and Surface Site Agreement* with Melvin and Susan Deutsch ("Deutsch Lease").   A memorandum of this lease was recorded with the Recorder of Deeds on June 25, 2014 at Instrument 201406250019575.

37.     Under the Deutsch Lease, Apex possesses the right "to explore, develop, produce, and market oil and gas" from six (6) tax map parcels within the Township in the MEO District.

38.     As the current lessee under the Farmout Agreement, the Beattie Central Pad-37 Leases, the Draftina Lease, the White Central Pad-30 Leases, the Holsinger Lease, the

Whitehead Lease, the Deutsch Lease, and the Drakulic Lease, Apex has vested legal property rights, and as the lessee, Apex is authorized to sign all applications seeking to improve the leasehold estates with unconventional oil and gas well-pads for the purpose of exploring, developing, producing, and marketing oil and gas found in the Marcellus shale formation.  True and accurate copies of the Holsinger Lease, Whitehead Lease, and the memoranda of the Deutsch and the Drakulic Leases are attached as **Exhibit B** to the Complaint.

39.    The property rights created under the Beattie Central Pad-37 Leases, the Draftina Lease, the White Central Pad-30 Leases, the Holsinger Lease, the Whitehead Lease, the Deutsch Lease, and the Drakulic Lease existed well prior to the Township's proposed Pending Ordinance.

**(C)    The Pending Ordinance.**

40.    On or about June 27, 2014, representatives of Apex met with the Township staff to discuss Apex's proposed drilling program in the Township.

41.    Apex presented a drilling plan consisting of seven (7) proposed well-pad sites, including the proposed well-pad sites designated as the Deutsch Pad, the Drakulic Pad, the Numis Pad, the Backus Pad, the Trafford Oil Pad, the Skena Pad, and the Palmquist Pad.

42.    Apex subsequently proposed and presented to the Township the Quest Central Pad-7, the Beattie Central Pad-37, the Draftina Central Pad-31, and the White Central Pad-30.

43.    In the Summer of 2014, Apex issued Act 14 notices for the Deutsch Pad and the Drakulic Pad.  The Act 14 notice for the Deutsch Pad was received by the Township via certified mail on July 31, 2014; the Act 14 notice for the Drakulic Pad was received by the Township via certified mail on August 12, 2014.

44.     At the time of the June 27, 2014 meeting and Apex's submission of the Act 14 notices, the Township's existing Zoning Ordinance permitted oil and gas drilling on all properties within the Township as a special exception subject to the following four (4) specific criteria:  (1) the proposed oil and gas well could not be closer than one hundred (100) feet to an adjacent property line or public road or two hundred (200) feet to an existing dwelling, school, hospital, or similar residential uses or to any water source; (2) the applicant must submit its applications to and approvals from DEP for the proposed well; (3) a suspension or revocation of a permit would constitute a suspension or revocation of the Township's zoning permit; and (4) a performance bond would have to be posted to use Township roads.  The Zoning Ordinance drew no distinctions between conventional and unconventional wells.

45.     On October 20, 2014, in response to Apex's Act 14 notices for the Deutsch Pad and the Drakulic Pad, the Board enacted Resolution No. 85/2014.  A true and correct copy of Resolution No. 85/2014 is attached as **Exhibit C** to this Complaint.

46.     Under Resolution No. 85/2014, the Board directed the Township's Zoning Administrator as well as the Township's Planning and Zoning Commission to review all applications in accordance with a proposed "amended, revised, updated, codified, and recodified Zoning Ordinance and Zoning Map."

47.     The proposed "amended, revised, updated, codified, and recodified Zoning Ordinance and Zoning Map" ("Pending Ordinance") dated October 29, 2014, was published at http://ecode360.com/documents/pub/PE1662/Legislation/? and available through a link on Penn Township's website: http://www.penntwp.org.  A true and correct copy of the proposed Pending Ordinance is attached as **Exhibit D** to this Complaint.

48.     Article II, Section 190-202 of the Pending Ordinance, as amended, defines "Oil and Gas Operations" to include "well location assessment, . . . well site preparation, construction, drilling, hydraulic fracturing and site restoration associated with an oil or gas well of any depth."  The Oil and Gas Operations use is defined to include construction and installation "of all equipment directly associated with activities."

49.     "Unconventional oil and gas drilling" was permitted as a conditional use within the MEO District.  *Id.*  at § 190-407.E(1).

50.     The MEO District is set forth in Section 190-407 of the Pending Ordinance.  The Pending Ordinance also contains Section 190-641 which sets forth specific review criteria for "Oil and Gas Operations (Unconventional Wells)," although "unconventional wells" is not otherwise expressly defined in the Pending Ordinance.

51.     The Quest Central Pad-7, the Beattie Central Pad-37, the Draftina Central Pad-31, the White Central Pad-30, the Deutsch Pad, the Drakulic Pad, the Numis Pad, and the Backus Pad are all proposed well-pad sites for unconventional wells to be located within the MEO District.

52.     Unlike a special exception application which is heard by the Board, a conditional use application must be presented to the Township's Planning Commission, who makes a recommendation on the conditional use application, prior to the application being submitted to and heard by the Commissioners.

53.     Although Section IV of Resolution No. 85/2014 directed the Solicitor of Penn Township "to prepare the legal notice for public hearing," no public hearing on the Pending Ordinance has occurred, and the Pending Ordinance remains "pending."

**(D)     Apex Submits an Application to Permit the Quest Central Pad-7 and the Township Responds by Amending the Pending Ordinance.**

54.     On December 31, 2014, after discussions with the Township, Apex prepared applications for conditional use and land development plan approval to Township for the Quest Central Pad-7.

55.     In response, the Township, without subjecting the Pending Ordinance to public hearing, amended the proposed Pending Ordinance by approving Resolution 33/2015 on January 19, 2015.  A true and correct copy of Resolution 33/2015 is attached as **Exhibit E**.

56.     Resolution 33/2015 altered the procedure for permitting "Oil and Gas Operations" such as Apex's proposed well-pads, requiring applicants to proceed for a special exception before the Board as opposed to seeking a conditional use approval through the Commissioners.

57.     Moreover, Resolution 33/2015 added Section 190-641(D)(9) to the Pending Ordinance.

58.     Section 190-641(D)(9) incorporates Article I, Section 27 of the Pennsylvania Constitution, and provides that:

> The applicant shall demonstrate that the drill site operations will not violate the citizens of Penn Township's right to clean air and pure water as set forth in Art. I Sec. 27 of the Pennsylvania Constitution (The Environment Rights Amendment). The applicant shall have the burden to demonstrate that its operations will not affect the health, safety, or welfare of the citizens of Penn Township or any other potentially affected land owner.  The application submitted shall include reports from qualified Environmental individuals attesting that the proposed location will not negatively impact the Township residents' Environmental Rights, and, will include air modelling and hydrogeological studies as potential pathways that a spill or release of fluid may follow.

59.     Section 190-641(D)(9) does not define the terms used therein, including "Environmental", "qualified Environmental individuals," and "Environmental Rights."

-12-

60.     To the extent Section 190-641(D)(9) requires the applicant to show no negative impact on the Township's residents, Section 196-641(D)(9) places an impossible, and therefore, untenable condition upon the applicant.

61.     And, although Article 1, Section 27 is a constitutional provision of general applicability, the Commissioners have only imposed this requirement on Oil and Gas Operations within the Township.

62.     Regardless of noxiousness, no other use, including any other industrial or extraction use, is subject to a similar restrictive provision based on Article I, Section 27.

63.     Upon information, no evidence was presented to the Township to support this irrational, arbitrary, and unequal treatment of Oil and Gas Operations which are legally permitted in the Commonwealth of Pennsylvania under the Oil and Gas Act and MPC and regulated by the DEP as well as other state and federal agencies.

**(E)      The Board Approves the Quest Central Pad-7.**

64.     On January 22, 2015, Apex submitted applications for special exception and land development plan approvals related to Quest Central Pad-7 to the Township.

65.     The Board held a public hearing related to Apex's special exception application for the Quest Central Pad-7 on February 12, 2015, and that hearing also was continued to March 12, 2015.

66.     The Commissioners, by its Solicitors, appeared in the public hearing before the Board.

67.     The Commissioners did not interpose any objections during the public hearing to Apex's special exception application for the Quest Central Pad-7.

68.     On April 14, 2015, the Board issued a Decision granting special exception approval to the Quest Central Pad-7.   A true and correct copy of the Decision is attached as **Exhibit F** to this Complaint.

69.     In the Decision, the Board concluded, *inter alia*, that "[a]ny anticipated emissions will be monitored as required by the relevant governmental agencies."   The Board also found that "potential emission of air contaminants such as smoke, ash, dust, fumes, gases, odors and vapors will be minimal and comply with the appropriate regulations for such emissions as established by relevant federal, state, and local agencies."

70.     In approving the special exception application, the Board recognized that "temporary" heavy truck traffic would occur during the construction of the well-pad, the movement of the drilling equipment to the site, and the fracking (*i.e.*, completion) process.   The Board characterized such traffic concerns as temporary and short.

**(F)     The Township Unlawfully Forces Apex to Sue to Commence Drilling of the Quest Central Pad-7.**

71.     Subsequent to the issuance of the Board's Decision, an objectors' group filed an appeal of the Decision to the Westmoreland Court of Common Pleas at Civil Action No.: 2076 of 2015.

72.     Under well-established Pennsylvania law, upon obtaining land use approval and assuming that all necessary third-party permits are obtained, "[i]n the absence of a supersedeas, applicant was entitled to have his permit despite the zoning appeal.   However, until the zoning appeal was resolved, any action taken under the permit would be at applicant's peril." ROBERT S. RYAN, PENNSYLVANIA ZONING LAW AND PRACTICE § 9.5.8 at p. 230 (George T. Bisel Co. rev. June 15, 1993).

73.     Pursuant to Decision and Resolution No. 33/2015 as well as third-party permits, Apex was immediately entitled to construct the Quest Central Pad-7 at its own risk.

74.     However, subsequent to issuance of the Decision, the Commissioners acted on Apex's land development plan application by adopting Resolution No. 56/2015.  A true and correct copy of Resolution No. 56/2015 is attached as **Exhibit G** to this Complaint.

75.     As adopted, Resolution No. 56/2015 approved Apex's land development plan for the Quest Central Pad-7 site.

76.     By approving the land development plan, the Commissioners admitted that the Quest Central Pad-7 satisfied all of the objective criteria of Penn Township's Subdivision and Land Development Plan Ordinance ("SALDO").

77.     Notwithstanding the Board's admission that Apex's land development plan meets the objective criteria of the SALDO and the fact that the Township's Planning and Zoning Commission recommended approval of Apex's land development plan without conditions, the Commissioners unilaterally imposed several conditions upon Apex under Resolution No. 56/2015, including the conditions that:

1.     Pursuant to Chapter 156 (Subdivision and Land Development) of the Code of the Township of Penn ("Code"), Applicant must show evidence of compliance with Chapter 190 (Zoning) of the Code, which includes the expiration of any and all appeal periods relating to the Penn Township Zoning Hearing Board decision dated April 14, 2015.

3.     Review and approval by the Township of the site-specific emergency response plan submitted by Applicant.

5.     Review and approval by the Township of the Air Modeling and Hydrogeological Study submitted by Applicant.

6.     Compliance with Section 190-407(F)(5)(d)(6) of the Code (Zoning).

7.     Submission of a copy of the drilling permit issued to Applicant by the Commonwealth of Pennsylvania, Department of Environmental.

78. As written, the Commissioners required Apex to wait until the appeal of the objectors' group had been exhausted before allowing Apex to pull permits to develop Quest Central Pad-7.

79. Apex was advised neither zoning nor building permits would be issued by the Township based on the conditions imposed under Resolution No. 56/2015 until the appeal of the objectors' group is fully resolved. Apex publicly advised the Commissioners that Resolution No. 56/2015 was unlawful and would damage Apex.

80. After the Commissioners enacted Resolution 56/2015, to secure the unquestionable right to construct the Quest Central Pad-7, on May 29, 2015, Apex filed a *Complaint Seeking Mandamus to Compel Issuance of Permits* in the Court of Common Pleas for Westmoreland County.

81. Apex and the Township resolved the litigation through a settlement which permitted Apex to obtain all necessary final Township permits to construct the Quest Central Pad-7.

82. Apex constructed the Quest Central Pad-7, and on or about, October 21, 2015, the Quest Central Pad-7 went into production.

83. During construction, drilling, completion, and placing the two (2) unconventional wells into production at the Quest Central Pad-7, the DEP inspected the project on ten (10) separate occasions. None of those inspections resulted in the DEP issuing a notice of violation to Apex or even requesting Apex to take any corrective actions.

**(G)    Apex Submits Applications for Seven Additional Unconventional Well-Pads.**

84. On October 20, 2015, Apex submitted the Applications for Special Exception to Permit the Use of the Beattie Central Pad-37, the Draftina Central Pad-31, the

White Central Pad-30, the Numis Pad, the Backus Pad, the Deutsch Pad, and the Drakulic Pad ("Applications").

85.     Apex submitted the Applications, in part, because the Township publicly advised that the Pending Ordinance would be reviewed and subject to revisions.

86.     Under the Applications, Apex sought to improve seven (7) sites zoned RR Rural Resource District and situated in the MEO District, with an access road, a well-pad, and differing numbers of unconventional oil and gas wells (the "Improvements").

87.     Under the Applications, Apex did not seek to permit use of any structures, equipment, or improvements proscribed by the Ordinance.

88.     To permit the Improvements, Apex gathered and submitted all necessary evidence, including risk assessment reports from ERM, an industry expert, on air modelling and hydrogeological studies as potential pathways that a spill or release of fluid may follow.

89.     On November 25, 2015, the Township rejected the Applications claiming that, *inter alia*, the Applications were not signed by the landowner.

90.     On December 14, 2015, the undersigned wrote the Township to advise that under the MPC a person holding a long-term leasehold interest was a landowner, and the Applications should be accepted and scheduled for a hearing.  A copy of this letter is attached as **Exhibit H** to this Complaint.

91.     The same day, the Solicitor for the Board, having reviewed the undersigned's letter, accepted the Applications as filed and found that the Applications should be scheduled for hearing.  A copy of this letter is attached as **Exhibit I** to this Complaint.

**(H)     Township Denied Apex's Applications to Develop Unconventional Well-Pads.**

92.     The Board has held and closed hearings on the Applications for the Beattie Central Pad-37 and the Draftina Central Pad-31.  The Board is in the process of holding public hearings on the White Central Pad-30 which are set to conclude on June 9, 2016.

93.     Apex presented evidence establishing its right to the special exception under the Application for the Beattie Central Pad-37 at public hearings held January 14, 2016 and February 11, 2016.

94.     Apex presented evidence establishing its right to the special exception under the Application for the Draftina Central Pad-31 at public hearings held February 29, 2016, and March 10, 2016.

95.     Apex presented evidence establishing its right to the special exception under the Application for the White Central Pad-30 at public hearings held April 14, 2014, and May 12, 2016.

96.     For each Application, Apex's evidence consists of the testimony of a registered professional engineer who has testified to the minimization of environmental impacts based on the particular design features of each well-pad as well as the topography of each well-pad site; the chief operating officer of Apex, who has established that Apex operates its construction, drilling, completion, and production of unconventional wells at or considerably better than the industry standards; and an environmental consultant who after reviewing site specific data has concluded the risks to the air or water sources posed by spills at each proposed well-pad would be either minor or remote.

97.     During the course of proceedings, the Board has allowed members of the objectors' group to both testify subject to cross-examination and to get a second bite at the apple

by speaking in public comment; the Board has elevated public comment and treated comment as evidentiary even though that comment is not subject to cross-examination, and upon information and belief, the Board has conducted independent research outside the scope of the public hearings.

98.     On April 14, 2016, the Board denied Apex's Application for Beattie Central Pad-37 because Apex had allegedly failed to show that the project would not violate Section 190-641(D)(9) of the Pending Ordinance, which incorporates Article I, Section 27 of the Pennsylvania Constitution.  A true and correct copy of the Board's denial of the Beattie Central Pad-37 is attached as **Exhibit J** to this Complaint.  The Board's denial is inconsistent with the approval of Apex's Quest Central Pad-7.

99.     On May 12, 2016, the Board denied Apex's Application for Draftina Central Pad-31 because Apex failed to show that the project would not violate § 190-641(D)(9) of the Pending Ordinance, which incorporates Article I, Section 27 of the Pennsylvania Constitution.  A true and correct copy of the Board's denial of the Draftina Central Pad-31 is attached as **Exhibit K** to this Complaint.  The Board's denial is inconsistent with the approval of Apex's Quest Central Pad-7.

100.     In denying the application, the Board acted in an arbitrary and capricious manner and committed clear error.

101.     On May 12, 2016, the Board claimed that Apex's evidence submitted for the White Central Pad-30 was insufficient to show that the Development would not violate § 190-641(D)(9).

102.     To satisfy the needs of Section 190-641(D)(9), Apex submitted reports which an industry expert has testified meets the industry standard for air modelling and

hydrogeological studies as potential pathways that a spill or release of fluid may follow.  This testimony is uncontroverted.  There are no other objective criteria set forth in Section 190-641(D)(9).

103.    At no point has the Board articulated to Apex as to what objective criteria Apex must meet to satisfy Article I, Section 27.

104.    Under Pennsylvania law, the Board has no authority to require evidentiary reports not requested by the Commissioners in enacting the Pending Ordinance.

105.    Moreover, under well-established federal and state law, all development and all proposed uses are recognized to have some negative impact on surrounding properties, and zoning laws exist to balance the rights of a property owner to develop and profit from real property with the public's interests in orderly, safe development.

106.    Subsequent to the denial of the Beattie Central Pad-37 Application for Special Exception, on May 26, 2016, the Commissioners issued a written Resolution 59/2016 denying Apex's Application for preliminary land development plan for Beattie Central Pad-37.

107.    In denying the Application, the Commissioners relied on the Board's determination that Apex failed to show that the Beattie Central Pad-37 would not violate § 190-641(D)(9) of the Ordinance.  A true and correct copy of the Resolution is attached as **Exhibit L** to this Complaint.   The Commissioners, however, conceded that Apex's Application for preliminary land development plan otherwise complied with all objective criteria of the Pending Ordinance.

108.    At the time of the Commissioners' issuance of Resolution 59/2016, the Township was well aware that Apex had filed a land use appeal claiming, *inter alia*, that the

Board's actions were arbitrary and capricious, in error of the law, and ultimately unconstitutional.

109.    The MPC permits the Township to condition final approval of the land development plan on Apex receiving special exception approval.

110.    The Township is also considering additional material revisions to the Pending Ordinance which will negatively impact Apex.   Upon information and belief, the Township intends to adopt unconstitutionally restrictive conditions in a Phase I zoning process and subsequently intends to implement even more restrictions in a Phase II zoning process.  This includes redefining unconventional wells and conventional wells and subjecting unconventional wells to additional requirements.

## COUNT I
## EQUAL PROTECTION UNDER 42 U.S.C. § 1983

111.    Apex incorporates each of the allegations contained in paragraphs 1 through 110 as if fully set forth herein.

112.    The Fourteenth Amendment to the United States Constitution states that "… nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

113.    Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

114.    Under color of state law, the Township has violated federal law and deprived Apex the rights and privileges secured by the United States Constitution, including equal protection under the law.

115.    The Township's actions are an arbitrary and irrational abuse of power.

116.    The Township deprived Apex of its equal protection rights by, *inter alia*, enacting and enforcing Section 190-641(D)(9) which requires Apex to attest that its development "will not negatively impact the Township residents' Environmental Rights."   Under Pennsylvania law, all uses have or potentially have risks that may negatively impact environmental rights.   But, the Oil and Gas Operations use is the only use the Township expressly subjects to compliance with Section 190-641(D)(9) that incorporates and enforces the ambiguous, undefined general constitutional provision set forth in Article 1, Section 27 of the Pennsylvania Constitution.   Additionally, Oil and Gas Operations is the only use under the Pending Ordinance in which the Township imposes incorporates specific performance standards and expressly imposes such standards on construction.

117.    No other uses, including all the other industrial uses, are required to comply with such requirements and no other developers must meet such unattainable standards.

118.    The Township irrationally distinguished between similarly situated classes of persons.

119.    The Township's actions constitute a constitutionally impermissible denial of equal protection because such varying treatment of different groups or persons is unrelated to the achievement of any combination of legitimate purposes because it bears no substantial relationship to the protection of environmental rights of the Township residents.

120.    The Township deprived Apex its rights with actual knowledge of the violations they were committing and with blatant disregard for the protection afforded to Apex under the United States and Pennsylvania Constitutions.

121.    The arbitrary and irrational actions by the Township resulted in damages and continue to harm Apex, including, without limitation, loss of property rights.

122.    As a result of its actions violating Apex's constitutional rights, the Township is liable to Apex for its losses in an amount to be determined at trial.

## COUNT II
## VOID FOR VAGUENESS (DUE PROCESS CLAUSE) UNDER 42 U.S.C. § 1983

123.    Apex incorporates each of the allegations contained in paragraphs 1 through 122 as if fully set forth herein.

124.    Under color of state law, the Township has violated federal law and deprived Apex the due process rights secured by the United States Constitution.

125.    Due process requires, minimally, fair notice of the conduct proscribed under the law.

126.    The Pending Ordinance is unconstitutionally vague as it gives no objective notice as what requirements an applicant for special exception must satisfy in order to comply with the Pending Ordinance.   For example, Section 190-641(D)(9) does not define "Environmental rights" and does not set forth clear guidelines as to what amounts to adequate demonstration that the drill site operations will not violate such "Environmental rights."

127.    The Pending Ordinance fails to provide an ordinary person of average intelligence an opportunity to understand what standard an applicant is required to satisfy by using such non-quantifiable and subjective terms as "excessive" and "dazzling," as provided in Section 190-635.

128.    The Pending Ordinance is replete with subjective standards and undefined terms.   The Township necessarily relied on these undefined terms in denying Apex's Application.

-23-

129.    The Pending Ordinance confers unfettered discretion to the Township to arbitrarily deny or permit special exceptions for development of oil and gas wells.  Under the Pending Ordinance, the Board may deny some special approval applications and permit others even if all applicants submit identical proof of compliance.

130.    Despite Apex submitting all proof required by the Pending Ordinance, the Township denied its Applications and will continue to deny the Pending Applications under Section 190-641(D)(9) and Section 190-635 of the Pending Ordinance because Sections 190-641(D)(9) and 190-635 is unconstitutionally vague.

131.    The arbitrary and irrational actions of the Township resulted in damages and continue to harm Apex, including, without limitation, loss of property rights until Section 190-641(D)(9) and 190-635 is struck as void.

132.    As a result of its actions violating Apex's constitutional rights, the Township is liable to Apex for its losses in an amount to be determined at trial.

**COUNT III**
**SUBSTANTIVE DUE PROCESS UNDER 42 U.S.C. § 1983**

133.    Apex incorporates each of the allegations contained in paragraphs 1 through 132 as if fully set forth herein.

134.    The Commissioners' authority to enact Section 190-641(D)(9) arises from the authority provided under the MPC.

135.    All uses and development regulated by zoning have presumptively negative impacts on, *inter alia*, noise, light, dust, emissions, stormwater run-off, etc. which may affect surrounding properties.  The MPC serves to balance a landowner's right to develop property against the interests of the public in safe and orderly development to ensure development does not result in excessive threat to the health safety and welfare of a

municipality's residents.   In the context of a special exception, the Commissioners have evidenced an express intent to permit the use throughout the MEO District provided that the applicant meets the objective criteria for the use.

136.   Under well-established Pennsylvania law, the MPC strikes a balance between the landowner and public interests that resolves ambiguities in favor of development.

137.   Under the MPC, "[z]oning ordinances shall provide for the "reasonable development of minerals in each municipality.  53 Pa. C.S.A. § 10603(i).  And, the MPC defines "minerals" to include "crude oil and natural gas."  53 Pa. C.S.A. § 10107.  The Oil and Gas Act and implementing regulations were designed to comprehensively regulate oil and natural gas development including all operational aspects of drilling and completion.

138.   Section 190-641(D)(9) as enacted requires Apex to attest that its development use "will not negatively impact the Township residents' Environmental Rights." However, under Pennsylvania law, all uses have or potentially have risks that may negatively impact environmental rights.  But, the Oil and Gas Operations use is the only use the Township expressly subjects to compliance with Section 190-641(D)(9) and is the only use upon which the Township imposes specific performance standards in the construction phases including drilling, and completion.

139.   The enactment and enforcement of Section 190-641(D)(9) against Apex does not serve a legitimate state purpose as it applies only to oil and gas operations and no other uses in the Township, including any other uses that may negatively impact the Township residents' environmental rights.

140.   The enactment and enforcement of Section 190-641(D)(9) is arbitrary and unreasonable because it bears no substantial relationship to the health, safety, or general welfare

of the community, which may be at a far greater risk from environmental hazards produced by industry groups other than oil and gas producers.

141.    The enactment and enforcement of Section 190-641(D)(9) exceeds the Township's express statutory authority in that the MPC requires reasonable development of natural gas rights and Section 190-641(D)(9) imposes vague and ambiguous standards on natural gas which are ultimately impossible to meet.

142.    The Township's enactment and enforcement of Section 190-641(D)(9) against Apex has been deliberate, arbitrary, irrational, exceeding the limitations on its authority under the MPC and the Oil and Gas Act, and amounts to an abuse of official power that shocks the conscience. The arbitrary and irrational actions by the Township resulted in damages and continue to harm Apex, including, without limitation, loss of property rights.

143.    As a result of its actions violating Apex's substantive due process rights, the Township is liable to Apex for its losses in an amount to be determined at trial.

## COUNT IV
## PROCEDURAL DUE PROCESS UNDER 42 U.S.C. § 1983

144.    Apex incorporates each of the allegations contained in paragraphs 1 through 143 as if fully set forth herein.

145.    Procedural due process requires sufficient notice to apprise interested parties of the importance of the action, afford them an opportunity to present objections, and enable them to determine what is being proposed and what must be done to protect their interests.

146.    Under color of state law, the Township has violated federal law and deprived Apex the procedural due process rights secured by the United States Constitution by

taking or devaluing Apex's property, and denying Apex's right to develop and produce gas on the property, without affording the Apex an opportunity to be heard by an impartial tribunal.

147.    The Township has failed and refused to afford Apex due process in blatant disregard for Apex's well-established rights.

148.    The Township deprived Apex its rights with actual knowledge of the violations it was committing and with blatant disregard for the protection afforded to Apex under the United States and Pennsylvania Constitutions.

149.    The Township continues to make additional arbitrary amendments to the Pending Ordinance without formally adopting the amendments or even holding public hearings on the amendments, and demanding that Apex comply with such amendments.

150.    The Township arbitrarily imposed unlawful land use regulations against Apex and its rights to develop and produce gas in a manner that does not comply with due process protections required under State law and the United States Constitution to determine and prevent unconstitutional takings in violation of 42 U.S.C. § 1983.

151.    The arbitrary and irrational actions by the Township resulted in damages and continue to harm Apex, including, without limitation, loss of property rights.

152.    As a result of its actions violating Apex's procedural due process rights, the Township is liable to Apex for its losses in an amount to be determined at trial.

## COUNT V
## CONTRACT CLAUSE UNDER 42 U.S.C. § 1983

153.    Apex incorporates each of the allegations contained in paragraphs 1 through 152 as if fully set forth herein.

154.    Apex obtained valid and binding contractual leasehold rights to explore, develop, and produce natural gas in the Marcellus Shale through the Farmout Agreement, Beattie

Central Pad-37 Leases, the Draftina Lease, the White Central Pad-30 Leases, the Holsinger Lease, the Whitehead Lease, the Deutsch Lease, and the Drakulic Lease.

155.    At the time Apex obtained its leasehold rights, under the MPC, "[z]oning ordinances shall provide for the "reasonable development of minerals in each municipality. 53 Pa. C.S.A. § 10603(i). And, the MPC defines "minerals" to include "crude oil and natural gas." 53 Pa. C.S.A. § 10107.

156.    Moreover, Pennsylvania had enacted the Oil and Gas Act and implementing regulations were designed to comprehensively regulate oil and natural gas development, including all operational aspects of drilling and completion.

157.    The Pending Ordinance in general, as amended, substantially impairs Apex's contractual rights under the Farmout Agreement, the Beattie Central Pad-37 Leases, the Draftina Lease, the White Central Pad-30 Leases, the Holsinger Lease, the Whitehead Lease, the Deutsch Lease, and the Drakulic Lease by taking Apex's leasehold entirely, rendering the contractually rights essentially null and void, and leaving the leases economically valueless.

158.    The enactment of Section 190-641(D)(9) and the enforcement of the Pending Ordinance by the Township serves no genuine, substantial and legitimate public interest, because it does not protect the health and environmental rights of the Township residents from any industrial production other than oil and gas operations.

159.    The arbitrary and irrational actions by the Township substantially impair the legitimate and lawful contractual rights provided Apex under the Farmout Agreement, the Beattie Central Pad-37 Leases, the Draftina Lease, the White Central Pad-30 Leases, the Holsinger Lease, the Whitehead Lease, the Deutsche Lease, and the Drakulic Lease in violation of Article I, Section 10 of the United States Constitution.

160.    The enactment of Section 190-641(D)(9) exceeds the Township's express statutory authority in that the MPC requires reasonable development of natural gas rights and Section 190-641(D)(9) imposes vague and ambiguous standards on natural gas which are ultimately impossible to meet.

161.    The arbitrary and irrational actions by the Township resulted in damages to Apex, including, without limitation, loss of its contractual rights under Farmout Agreement, Beattie Central Pad-37 Leases, the Draftina Lease, the White Central Pad-30 Leases, the Holsinger Lease, the Whitehead Lease, the Deutsch Lease, and the Drakulic Lease.

162.    As a result of its actions violating Apex's contractual rights, the Township is liable to Apex for its losses in an amount to be determined at trial.

## COUNT VI
## THE PENDING ORDINANCE IS *DE FACTO* EXCLUSIONARY

163.    Apex incorporates each of the allegations contained in paragraphs 1 through 162 as if fully set forth herein.

164.    It is a well settled principle of Pennsylvania law that a municipality must authorize all legitimate uses within its boundaries.

165.    It is well settled principle of Pennsylvania law that the leasehold interests to explore, develop, and produce natural gas is a property right which is subject to protection.

166.    Under the MPC, "[z]oning ordinances shall provide for the "reasonable development of minerals in each municipality.  53 Pa. C.S.A. § 10603(i).  And, the MPC defines "minerals" to include "crude oil and natural gas."  53 Pa. C.S.A. § 10107.

167.    The Township's enactment and enforcement of Sections 190-641(D)(9) and Sections 190-635 results in a *de facto* ban on all unconventional oil and gas operations within the Township.

168.     The Pending Ordinance is invalid as being exclusionary.

## COUNT VII
## THE PENDING ORDINANCE RESULTS IN A
## *DE FACTO*/REGULATORY TAKING OF PRIVATE PROPERTY

169.     Apex incorporates each of the allegations contained in paragraphs 1 through 168 as if fully set forth herein.

170.     The Takings Clause of the Fifth Amendment to the United States Constitution as incorporated under the Fourteenth Amendment to the United States Constitution prohibits taking of private property without just compensation.

171.     The Pending Ordinance in general, as amended, and the Township's specific denial of Apex's Applications under the Ordinance, makes production of gas from the Beattie Central Pad-37, the Draftina Central Pad-31, and the Pending Applications not viable and thus constitutes a *de facto* regulatory taking of Apex's property.

172.     The Pending Ordinance serves no genuine, substantial and legitimate public interest, because it does not protect the health and environmental rights of the Township residents from any industrial production other than oil and gas operations.

173.     The Township provided no compensation to Apex for the taking of Apex's property.

174.     The arbitrary and irrational actions by the Township resulted in damages to Apex, including, without limitation, loss of property rights.

175.     As a result of its actions violating Apex's property rights, Apex is entitled to a variance permitting the Beattie Central Pad-37, the Draftina Central Pad-31, and the Pending Applications.

**COUNT VIII**
**PREEMPTION**

176.    Apex incorporates each of the allegations contained in paragraphs 1 through 175 as if fully set forth herein.

177.    The Township is impermissibly using the Pending Ordinance to regulate the development of oil and natural gas, which is exclusively and comprehensively regulated by the DEP pursuant to, *inter alia*, the Oil and Gas Act and implementing regulations.

178.    Section 3302 of the Oil and Gas Act, 58 Pa.C.S § 3302, provides as follows:

> No local ordinance adopted pursuant to the MPC or the Flood Plain Management Act shall contain provisions which impose conditions, requirements or limitations on the same features of oil and gas operations regulated by [the Oil and Gas Act] or that accomplish the same purposes as set forth in [the Oil and Gas Act].

179.    The Township has denied special exception applications on grounds that "no study or report was commissioned and there was insufficient testimonial evidence to demonstrate the lack of environmental impact on the surrounding residents during the preparation, drilling, and completions phases regarding noise, light, emissions and other issues that involve the environmental rights of the citizens."

180.    The Township has denied special exception applications on the grounds that the "ERM Air & Hydrogeological study  . . . does not provide sufficient satisfactory information regarding  . . . potential hazardous emissions from the preparation, drilling, fracturing and production operations and other issues, such as releases, to demonstrate that the requirements of [the Pending Ordinance are satisfied]."

181.    Emissions, releases, environmental impacts, and other issues related to the well location, preparation drilling (including cementing plans), fracturing, production, and

emergency response and other operations, are features of oil and gas operations that are regulated by the DEP through, *inter alia*, the Oil and Gas Act.

182.    By using the Pending Ordinance to deny the Applications on such grounds, the Township is imposing conditions, requirements, and limitations on emissions and releases which are the same features of oil and gas operations regulated by the Oil and Gas Act.

183.    Consequently, the Pending Ordinance is preempted by the Oil and Gas Act.

**COUNT IX**
**DECLARATORY JUDGMENT**
**UNCONSTITUTIONAL AND UNENFORCEABLE ORDINANCE**

184.    Apex incorporates each of the allegations contained in paragraphs 1 through 183 as if fully set forth herein.

185.    As stated above, the Pending Ordinance violates Apex's constitutional rights under the Equal Protection Clause, deprives Apex of substantive and procedural due process, and is preempted by the Pennsylvania Oil and Gas Act.

186.    There is an actual controversy concerning validity and enforceability of the Pending Ordinance between Apex and the Defendants.

187.    The Pending Ordinance has created uncertainty regarding Apex's rights with respect to production of gas from the Beattie Central Pad-37, the Draftina Central Pad-31, and the Pending Applications.

188.    Apex has a direct, substantial, and present interest in whether the Beattie Central Pad-37, the Draftina Central Pad-31, and the Pending Applications are permitted.

189.    Declaratory relief from this Court will terminate the dispute and controversy between Apex and the Defendants regarding the constitutionality and validity of the Pending Ordinance.

190.    A judicial declaration is necessary as to whether the Pending Ordinance violates Apex's constitutional rights, deprives Apex of substantive and procedural due process, and is preempted by or is unenforceable under relevant Pennsylvania law.

**COUNT X**
**DECLARATORY JUDGMENT**
**PENDING ORDINANCE IS PROCEDURALLY INVALID**

191.    Apex incorporates each of the allegations contained in paragraphs 1 through 190 as if fully set forth herein.

192.    The Pending Ordinance is procedurally invalid and void *ab initio*, because the notice thereof was insufficient to satisfy the requirements of procedural due process under the facts of this case.

193.    The Defendants are considering additional material revisions and amendments to the Pending Ordinance, which will directly and substantially impact Apex's rights.  These amendments include new definitions for unconventional wells and conventional wells and new requirements for unconventional wells.

194.    The failure of the Township to give any individualized notice to Apex of these amendments is arbitrary, unreasonable and unconscionable.

195.    The failure of the Township to provide any notice of the ongoing changes to the Pending Ordinance was arbitrary, unreasonable, and unconscionable.

196.   A judicial declaration is necessary as to whether the Pending Ordinance is illegal, null and void because the notice thereof was insufficient to satisfy the requirements of procedural due process.

WHEREFORE, Apex prays for relief and judgment against all Defendants as follows:

(1)   Compensatory and consequential damages to Apex's business and properties, including, but not limited to, the reduction in value of Apex's properties, increases in construction and material costs for use and operation of oil and gas wells resulting from the delays in the commencement and completion of the Development;

(2)   An additional amount to be proven at trial to compensate Apex for its costs in negotiating and attempting to comply with the Defendants' arbitrary and unjustified demands;

(3)   An additional amount to be proven at trial to compensate Apex for its substantial and irreparable loss of goodwill and business opportunities with potential customers as a result of the acts and omissions of the Defendants;

(4)   Equitable relief from all actions taken by the Defendants that were done in violation of Apex's rights secured by the United States Constitution;

(5)   Exemplary and/or punitive damages for the Defendants' intentional, willful, wanton, outrageous or malicious conduct, characterized by their ill will and intent to injure Apex or the Township's gross recklessness or gross negligence evincing a conscious disregard for Apex's rights;

(6)   Reasonable attorneys' fees and costs;

(7)   Pre-judgment and post-judgment interest on all amounts awarded to Apex against the Township by the Court;

(8)   Declaratory judgment that the Pending Ordinance is unconstitutional, unenforceable, and procedurally invalid as it violates Apex's constitutional rights, deprives Apex of substantive and procedural due process and is preempted under relevant Pennsylvania law; and

(9)   Any other relief as the Court deems proper, fair and equitable.

Date:  June 8, 2016

Respectfully submitted,


/s/ *Jeffrey G. Wilhelm*
Jeffrey G. Wilhelm
Pa. ID #209135

Aleksandra V. Williams
Pa. ID #309779

Reed Smith LLP
Reed Smith Centre, 12th Floor
225 Fifth Avenue
Pittsburgh, PA  15222
Tel:  412.288.3006
Fax:  412.288.3063
jwilhelm@reedsmith.com
avwilliams@reedsmith.com

Attorney for Plaintiff Apex Energy (PA) LLC