**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

APEX ENERGY (PA), LLC, a Delaware
limited liability company,

                    Plaintiff,

v.

PENN TOWNSHIP, PENN TOWNSHIP
ZONING HEARING BOARD, PENN
TOWNSHIP BOARD OF
COMMISSIONERS,

                    Defendants.

CIVIL DIVISION
NO. 16-cv-759
Judge Mark P. Kearney

**APEX ENERGY (PA), LLC'S BRIEF IN OPPOSITION TO THE MOTION
TO FILE AMCIUS BRIEF AND THE RELIEF SOUGHT THEREUNDER**

**TABLE OF CONTENTS**

Page

I.   STATEMENT OF FACTS ................................................................................................2

II.  ARGUMENT ................................................................................................................8

    (a)   Jurisdiction to Enter the Consent Decree Exists. ..............................................8

    (b)   The Settlement is Fundamentally Fair and Consistent with the MPC. ...........11

        (i)    Unconventional Wells Are Legislatively Permitted as of Right by the
              Township. .............................................................................................11

        (ii)   The Stipulation Imposes Fair and Reasonable Conditions to Permit the
              Legislatively Approved Development While Safeguarding Residents...............14

        (iii)  The Township Properly Balanced the Competing Claims..................15

    (c)   The Township and the Board Are Authorized to Enter the Stipulation. ...........16

    (d)   The Stipulation Comports with Process..........................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Becker v. Zoning Hearing Board of the Borough of Sewickley,*
     874 A.2d 1270 (Pa. Commw. Ct. 2005) ........................................... 17

*Boeing Co. v. Zoning Hearing Bd. of Ridley Twp.,*
     822 A.2d 153 (Pa. Commw. Ct. 2003) ........................................ *passim*

*Borough of Edgewood v. Lamanti's Pizzeria,*
     556 A.2d 22 (Pa. Commw. Ct. 1989) ............................................. 16

*Borough of West Mifflin v. Zoning Hearing Bd. of the Borough of West Mifflin,*
     452 A.2d 98 (Pa. Commw. Ct. 1982) ............................................. 15

*BPG Real Estate Investors-Straw Party II, L.P. v. Board of Supervisors of Newton Twp,*
     990 A.2d 140 (Pa. Commw. Ct. 2010) ......................................... 9, 10

*Bray v. Zoning Bd. of Adjustment,*
     410 A.2d 909 (Pa. Commw. Ct. 1980) ........................................... 12

*In re Brickstone Realty Corp.,*
     789 A.2d 333 (Pa. Commw. Ct. 2001) ........................................... 13

*Caln Nether Co., L.P. v. Bd. of Supervisors of Thornburg Twp.*
     840 A.2d 484 (Pa. Commw. Ct. 2004) ........................................... 14

*Cunney v. Bd. of Trustees of the Vill. of Grand View, New York,*
     660 F.3d 612 (2d Cir. 2011) ...................................................... 5

*Dore v. Zoning Hearing Bd.,*
     587 A.2d 367 (Pa. Commw. Ct. 1991) ........................................... 15

*Falker v. Lower Windsor Twp. Zoning Hearing Bd.,*
     988 A.2d 764 (Pa. Commw. Ct. 2010) ........................................... 17

*Good Fellowship Ambulance Club's Appeal,*
     178 A.2d 578 (Pa. 1962) ......................................................... 12

*Greaton Props. v. Lower Merion Twp.,*
     796 A.2d 1038 (Pa. Commw. Ct. 2002) .......................................... 12

*Kohl v. New Sewickley Twp. Zoning Hearing Bd.*
     108 A.3d 961 (Pa. Commw. Ct. 2015) ........................................... 14

*LaFarge Corp. v. Ins. Dep't,*
     735 A.2d 74 (Pa. 1999) .......................................................... 17

*Local Number 93, Int'l Association of Firefighters, AFL-CIO, C.L.C. v. City of Cleveland,*
478 U.S. 501 (1986) ................................................................................................ 8, 11, 19

*Lower Moreland Twp. v. Shell Oil Co.,*
281 A.2d 201 (Pa. Commw. Ct. 1971) ........................................................................ 12

*Markwest Libery Midstream & Resources, LLC v. Cecil Twp. Zoning Hearing Bd.,*
102 A.3d 549 (Pa. Commw. Ct. 2014) ........................................................................ 13

*In re McGlynn,*
974 A.2d 525 (Pa. Commw. Ct. 2009) ........................................................................ 17

*Miravich v. Twp. of Exeter,*
6 A.3d 1076 (Pa. Commw. Ct. 2010) .......................................................................... 18

*U.S. v. N.Y. Tel. Co.,*
434 U.S. 159 (1969) ...................................................................................................... 9

*Norate Corp. v. Zoning Bd. of Adjustment of Upper Moreland Twp.,*
207 A.2d 890 (Pa. 1965) ............................................................................................. 13

*Payne v. Kassab,*
312 A.2d 86 (Pa. Commw. Ct. 1973) .......................................................................... 15

*Pennsylvania Environmental Defense Foundation v. Commonwealth,*
108 A.3d 140 (Pa. Commw. Ct. 2015) ........................................................................ 15

*Phoenix Resources, Inc. v. Duncan Twp.,*
155 F.R.D. 507 (M.D. Pa. 1994) ................................................................................... 8

*Robinson Twp. v. Com.,*
83 A.3d 901 (Pa. 2013) (plurality opinion) ................................................................. 15

*Smith v. Township of Richmond,*
54 A.3d 404 (Pa. 2013) ............................................................................................... 18

*Summit Twp. Taxpayers Ass'n v. Summit Twp. Bd. of Supervisors,*
411 A.2d 1263 (Pa. Commw. Ct. 1980) ................................................................. *passim*

*T.H. Properties, L.P. v. Upper Salford Twp. Bd. of Sup'rs,*
970 A.2d 495 (Pa. Commw. Ct. 2009) ........................................................................ 19

*In re Tutu Water Wells CERCLA Litig.,*
326 F.3d 201 (3d Cir. 2003) .......................................................................................... 8

*Westchester Day Sch. v. Vill. of Mamaroneck,*
417 F. Supp. 2d 477 (S.D.N.Y. 2006) ........................................................................... 9

*Whitehall Manor, Inc. v. Planning Comm'n of City of Allentown,*
79 A.3d 720 (Pa. Commw. Ct. 2013) .......................................................................... 18

*William Holding Grp., LLC v. Bd. of Supervisors of West Hanover Twp.*,
    101 A.3d at 1212 (Pa. Commw. Ct. 2014) ............................................................ 13

*Yaracs v. Summit Acad.*,
    845 A.2d 203 (Pa. Commw. Ct. 2004) ........................................................... *passim*

*Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D. N.J. 1985) ........................................ 20

**Statutes**

53 P.S. §§ 10101, *et seq.* ....................................................................................... 1

53 P.S. § 10503 ...................................................................................................... 13

53 P.S. § 10909(a)(1) ............................................................................................. 15

53 P.S. § 10910.2 ................................................................................................... 16

53 P.S. § 10916.1(b) .............................................................................................. 15

53 P.S. § 56501 ...................................................................................................... 16

53 Pa. C.S.A. § 10107 ........................................................................................... 12

53 Pa. C.S.A. § 10601 ........................................................................................... 11

53 Pa. C.S.A. § 10603(i) ....................................................................................... 11

53 Pa. C.S.A. § 10603(c)(1) .................................................................................. 12

53 Pa. C.S.A. § 10909.1(a)(6) ............................................................................... 12

53 Pa. C.S.A. § 10912.1 ........................................................................................ 12

**Other Authorities**

ROBERT S. RYAN, PENNSYLVANIA ZONING LAW AND PRACTICE, § 5.2.6. (George T.
    Bisel Co., Inc. 2004) ......................................................................................... 13

Pending before the Court is the *Joint Motion to Approve Consent Judgment* (Doc. #39) ("Motion") filed by Plaintiff Apex Energy (PA), LLC ("Apex") and Defendants Penn Township Zoning Hearing Board (the "Board"), Penn Township Board of Commissioners ("Commissioners"), and Penn Township (collectively, "Parties") and the *Motion to File an Amicus Brief* (Doc. # 41) ("Amicus").   The proposed Consent Judgment and Stipulation ("Stipulation") resolves a zoning dispute involving federal questions under, *inter alia*, 28 U.S.C. § 1331, 42 U.S.C. § 1983, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.   Pennsylvania favors court-approved settlement of zoning disputes.   *Summit Twp. Taxpayers Ass'n v. Summit Twp. Bd. of Supervisors*, 411 A.2d 1263, 1266 (Pa. Commw. Ct. 1980).   And, that includes resolution of a zoning dispute through entry of a fair consent decree approved by a federal court.   *See e.g., Boeing Co. v. Zoning Hearing Bd. of Ridley Twp*., 822 A.2d 153, 163 (Pa. Commw. Ct. 2003) (rejecting a collateral attack on a federal consent decree which resulted in a *de facto* special exception); *Yaracs v. Summit Acad.*, 845 A.2d 203, 206-08 (Pa. Commw. Ct. 2004) (enforcing a federal consent decree which appellant collaterally challenged as an impermissible *de facto* variance).

Fundamentally, the Stipulation is fair and consistent with Pennsylvania zoning law.   Undisputedly, Apex's proposed use is permitted by special exception within Penn Township as well as under the Pennsylvania Municipalities Planning Code, 53 P.S. §§ 10101, *et seq*. ("MPC").   While recognizing Apex's lawful right to develop the use, the Stipulation protects the public interest by imposing a number of conditions on Apex's proposed development, including sound walls during construction phases, third-party noise monitoring, third-party air monitoring, reporting requirements, and prohibitions on the use of impoundments and waste water injection wells.   The conditions are not requirements of any Township zoning code and exist to further *balance* the property rights of Apex with the health, safety, and welfare

and Article 1, Section 27 concerns of Penn Township's residents.  The conditions consider the public input provided by Township residents, including members of Promote PT, Inc. ("Protect PT"), through testimony at public hearings on Apex's applications and on the Current Ordinance (defined below).  The imposition of reasonable conditions upon special exception approval is within the Board's authority under the MPC.

The Stipulation provides a pathway to resolve Apex's federal claims against the Commissioners and the Board.  Apex's constitutional claims under the Due Process and Equal Protection Clauses to the Fourteenth Amendment to the United States Constitution include, *inter alia*, the Board's denial of three (3) special exception applications based on a pending ordinance which the Commissioners did not enact, and the arbitrary application of an unconstitutional vague zoning requirement that Apex (but no other similarly situated category of developer) must demonstrate no negative impact to undefined "Environmental Rights."  Entering the Stipulation eliminates the potential risk of Apex prevailing on one or more of its substantial substantive claims and the Township residents afforded far fewer protections.

Finally, the Stipulation falls within the authority of the Commissioners and the Board to enter and public process has been met.  Given that (1) the Court has jurisdiction to enter the Consent Order based on the Stipulation, (2) the Stipulation is fundamentally fair, and (3) process has been satisfied, the Court should grant the Motion and approve the Stipulation while denying the relief requested in the Amicus.

## I.      **STATEMENT OF FACTS**

As set forth in the Stipulation, on or about June 27, 2014, representatives of Apex met with the Township staff to discuss Apex's proposed drilling program in the Township.  At the time of the June 27, 2014 meeting, pursuant to a zoning ordinance adopted in 1995 ("Zoning

Ordinance"), the Township permitted oil and gas drilling on all properties as a special exception subject to the following four (4) *de minimis* criteria.

On October 20, 2014, the Commissioners enacted Resolution No. 85/2014. Under Resolution No. 85/2014, the Commissioners directed the Township to review all applications in accordance with a proposed "amended … Zoning Ordinance and Zoning Map" (the "Pending Ordinance") which was subsequently published.

On December 31, 2014, Apex submitted applications for approval of the Quest Central Pad-7.  The Township, without subjecting the Pending Ordinance to public hearing, amended the proposed Pending Ordinance by approving Resolution 33/2015 on January 19, 2015.  Resolution 33/2015 added Section 190-641(D)(9) to the Pending Ordinance.  Section 190-641(D)(9) provided that:

> The applicant shall demonstrate that the drill site operations will not violate the citizens of Penn Township's right to clean air and pure water as set forth in Art. I Sec. 27 of the Pennsylvania Constitution (The Environment Rights Amendment). The applicant shall have the burden to demonstrate that its operations will not affect the health, safety, or welfare of the citizens of Penn Township or any other potentially affected land owner.  The application submitted shall include reports from qualified Environmental individuals attesting that the proposed location will not negatively impact the Township residents' Environmental Rights, and, will include air modelling and hydrogeological studies as potential pathways that a spill or release of fluid may follow.

The Board ultimately approved Apex's Quest Central Pad-7 as a special exception.

On June 6, 2016, the Township published the "fifth revised" zoning ordinance. The revised zoning ordinance was scheduled for public hearing and the Township heard public testimony on August 17, 2016.  On September 19, 2016, the Commissioners enacted Resolution 912-2016, adopting the revised zoning ordinance ("Current Ordinance").  *See* **Exhibit A**.  The Current Ordinance enacted Section 190-641(D)(9) but relabeled the Section as 190-641(D). Neither the Pending Ordinance nor the Current Ordinance defines the terms "Environmental,"

"Environmental Rights," and "qualified Environmental individuals."   The Current Ordinance also removed Sections 190-641(D)(1)-(8) from the Pending Ordinance and eliminated most of those provisions, including Section 190-641(D)(2)(g).  (*Compare* Exhibit A at pp. 119-122 *with* Doc. # 22 at Exhibit D, pp. 98-101).  The Current Ordinance further draws a distinction between conventional and unconventional oil and gas wells and permits injection disposal wells (*i.e.*, waste-water disposal) throughout the Township.

In the Fall of 2015, Apex submitted applications for special exception to permit the Beattie Central Pad-37, the Draftina Central Pad-31, the White Central Pad-30, the Numis Pad, the Backus Pad, the Deutsch Pad, and the Drakulic Pad.[1]  The Board held public hearings on the applications for the Beattie Central Pad-37, the Draftina Central Pad-31, and the White Central Pad-30.  As reflected in the decisions attached to Apex's First Amended Complaint (Doc. # 22) at Exhibits K, L, and M, Protect PT appeared over Apex's objection and was granted standing to present testimony before the Board.

Apex presented evidence in support of its applications for special exception for the Beattie Central Pad-37, the Draftina Central Pad-31, and the White Central Pad-30.  Apex's evidence consists, *inter alia*, of the testimony of a Pennsylvania registered professional engineer who has testified to the minimization of environmental impacts based on the particular design features of each well-pad as well as the topography of each well-pad site; the chief operating officer of Apex, who has testified that Apex operates its construction, drilling, completion, and production of unconventional wells at or considerably better than the industry standards; and an environmental consultant who after reviewing site specific data has concluded the risks to the air or water sources posed by spills at each proposed well-pad would be either minor or remote.  Apex's evidence presented for the three applications was substantially similar to the evidence

---

[1] Apex is the only applicant that filed applications for special exception approval under the Pending Ordinance.

presented for the Quest Central Pad-7.   The Board had previously approved Apex's special exception application for Quest Central-Pad-7.

On April 14, 2016, the Board denied Apex's application for the Beattie Central Pad-37.  On May 12, 2016, the Board denied Apex's application for the Draftina Central Pad-31.[2]  On July 14, 2016, approximately 38 days after publication of the now Current Ordinance, the Board denied Apex's application for the White Central Pad-30.  Section 190-641(D)(2)(g) of the Pending Ordinance is cited in all three (3) of the Board's denials and non-compliance with that provision is identified as a direct basis to deny Apex's applications for the Beattie Central Pad-37 and the White Central Pad-30.  Although public hearings occurred before the Board, none of the three (3) special exception applications proceeded under an ordinance actually enacted by the Commissioners.

On June 8, 2016, Apex commenced this civil action asserting claims, *inter alia*, under 42 U.S.C. § 1983 alleging violations of the Due Process and Equal Protection Clauses to the United States Constitution.  (Doc. #1).  Apex amended the Complaint (Doc. #22) subsequent to the Commissioners' initial publication of the Current Ordinance and the Board's subsequent denial of Apex's special exception application for the White Central Pad-30 under the Pending Ordinance.  Apex bases its claim, *inter alia*, on the Board's denial of three (3) special exception applications applying the never enacted Pending Ordinance, and the arbitrary application of an unconstitutional vague requirement that developers, like Apex, (but no other similarly situated category of developer) demonstrate that the development "will not negatively impact" the Township's residents undefined "Environmental Rights."   *See, e.g.*, *Cunney v. Bd. of Trustees of the Vill. of Grand View, New York*, 660 F.3d 612 (2d Cir. 2011) (holding that a zoning ordinance

---

[2] The Commissioners also denied applications for preliminary land development approval for the Beattie Central Pad-37 and Draftina Central Pad-31 based on the Board's denial of the special exception applications.

is unconstitutionally vague where plaintiff shows that either:  (1) a failure to provide fair notice of what the law requires or (2) a failure to articulate sufficient standards to dissuade *ad hoc* application of the law).

Pursuant to conference with this Court, the Parties explored settlement.   On November 8, 2016, counsel for the Parties jointly advised the Court (Doc. # 32) that progress had been made on settlement.   On November 11, 2016, counsel for Defendants (Doc. #34) advised the Court that an agreement in principle had been reached by counsel.   The discussions between the Parties regarding settlement were conducted between counsel of record for the Parties, Apex, and the Solicitors for both the Board and the Commissioners.

Pursuant to the Stipulation, Apex, the Board, and the Commissioners agreed that the special exception permits and preliminary land development approvals should issue for the Beattie Central Pad-37, the Draftina Central Pad-31, and the White Central Pad-30 subject to the imposition of additional conditions on the special exception approvals.   The additional conditions include:

- employing "sounds walls" during the construction, drilling, and completion stages of development.  The sound walls will mitigate noise, light, and emissions;
- paying for third-party noise monitoring conducted every seventy-two (72) hours on a schedule selected by the Township;
- paying for third-party air monitoring twice weekly.  Air monitoring will also be provided in the event of a reportable spill until remediation;
- to the extent permitted by the DEP, consulting with and deferring to the Township regarding landscaping around each pad;
- maintaining a twenty-four hour emergency hot-line;
- employing low-glare lighting sources, light shields, and low vertical profile lighting equipment;
- consulting with the local school districts to minimize truck traffic during scheduled bus stops; and
- prohibiting staging of trucks on any public roads in Penn Township.

In addition, Apex has agreed not to construct any in-ground impoundments. Although permitted under the Current Ordinance, Apex has also agreed not to seek any permits within Penn Township to establish a conventional disposal injection well. Finally, Apex will agree to remand the Deutsch, Drakulic, and Numis applications to the Board for public hearings.[3]

The conditions address the light, noise, emissions, and traffic raised during the course of the public hearings. The remand of the Deutsch, Drakulic, and Numis applications for public hearings before the Board provides the relief precisely requested in Protect PT's Appeal. In remand from that appeal and the Backus application, Apex obtains clarity and certainty as to the objective standards and conditions it must show only under its evidentiary burden.

After negotiations with counsel concluded in a recommended settlement, the Commissioners noticed a special public meeting for the purpose of taking action on the settlement for December 5, 2016. As demonstrated by Protect PT's website, Protect PT had notice of the special meeting and its members appeared before the Commissioners. *See* **Exhibit B**. The Solicitor for the Commissioners summarized the recommended settlement to the public, and thereafter, the Commissioners heard public comment. That summary was also provided to the public in a writing. The Commissioners voted to approve the recommended settlement after taking public comment. Similarly, the Board took action on the recommended settlement at its regularly scheduled meeting on December 8, 2016. Protect PT had notice and its members appeared before the Board. *See* **Exhibit C**. The Solicitor for the Board summarized the recommended settlement to the public, and thereafter, the Board heard public comment. A copy of the Motion was provided to Protect PT's counsel twenty-three minutes (23) after filing. *See* **Exhibit D**. Protect PT clearly also had notice of this lawsuit since the filing. *See* Exhibit B.

---

[3] Apex claimed deemed approvals of these three (3) wells by publication on or about September 5, 2016. The proposed amicus party Protect PT filed a land use appeal of the deemed approvals at Civil Action 4708 of 2016 pending in the Westmoreland County Court of Common Pleas ("Protect PT's Appeal").

Apex maintains that this settlement is a fair and reasonable adjustment of the rights of the Parties while adequately safeguarding all of the residents of Penn Township as the Board and Commissioners are charged to do.

## II.   ARGUMENT

### (a)   Jurisdiction to Enter the Consent Decree Exists.

This Court has the jurisdiction to enter the Stipulation.  In *Local Number 93, Int'l Association of Firefighters, AFL-CIO, C.L.C. v. City of Cleveland*, 478 U.S. 501 (1986), the United States Supreme Court summarized the requirements for a consent decree as follows:

> Accordingly, a consent decree must spring from and serve to resolve a dispute within the court's subject matter jurisdiction.  Furthermore, the consent decree "must come within the general scope of the case made by the pleadings" and must further the objectives of the law upon which the complaint was based.  However, in addition to the law which forms the basis of the claim, the parties consent animates the legal force of a consent decree.  Therefore, a federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded after a trial.

*Id.* at 525 (internal citations omitted).  The granting of a consent decree is committed to the sound discretion of the trial court.  *Phoenix Resources, Inc. v. Duncan Twp*., 155 F.R.D. 507, 510 (M.D. Pa. 1994).  A consent decree should be approved if it is "fair, reasonable, and consistent" with the underlying body of law.  *See In re Tutu Water Wells CERCLA Litig.,* 326 F.3d 201, 207 (3d Cir. 2003).

The relief sought through the Stipulation, namely the reversal of three decisions based upon the developed record and subject to additional reasonable conditions to protect the health, safety and welfare of the Township residents as well as the remand of three other applications for further proceedings before the Board is consistent with Pennsylvania zoning law.[4]  It is well-established in Pennsylvania that the courts, including the federal courts, have

---

[4] Apex notes this Court would have power under the All Writs Act, 28 U.S.C. § 1651(a), to effectuate a remedy curing a constitutional violation regardless of Pennsylvania law.  The All Writs Act provides an arsenal of judicial

jurisdiction to approve consent judgments resolving zoning disputes. *Summit*, 411 A.2d at 1266 ("[C]ourt-approved settlements of zoning cases are lawful[.]"). In *Summit*, objectors challenged the court-approved settlement of a zoning dispute entered into by the landowner and the municipality, arguing that the settlement effectuated the grant of a variance. *Id.* The objectors contended that the variance was solely in the exclusive jurisdiction of the zoning hearing board and the settlement violated the MPC. *Id.* In affirming the settlement, the Pennsylvania Commonwealth Court noted that such settlements must be viewed "as being distinct from zoning hearing board variances; even though a judicial settlement may result in a departure from the ordained zoning pattern" and further stated "that kind of departure *falls within the court's jurisdiction*." *Id.* (emphasis added). Pennsylvania courts have acknowledged that settlements negotiated by the municipal bodies in resolution of a judicial proceeding do not exceed the authority granted under the MPC. *Id.* (affirming a court approved settlement that resulted in a *de facto* variance); *see also BPG Real Estate Investors-Straw Party II, L.P. v. Board of Supervisors of Newton Twp*, 990 A.2d 140, 148 (Pa. Commw. Ct. 2010) (stating that "settlement agreements are a permissible tool for resolving land use disputes" even if the agreement "permits a departure from existing zoning ordinance)"; *Yaracs*, 845 A.2d at 203 (enforcing a federal consent decree governing land use against collateral attack); *Boeing Co.*., 822 A.2d at 153 (affirming a settlement approved by the federal court that resulted in the *de facto* award of a special exception).

  *Boeing Co.* and *Yaracs* are dispositive of this Court's authority to approve a land use settlement. In *Boeing Co.*, the Pennsylvania Commonwealth Court examined a consent

---

implements designed to achieve the "rational ends of law." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1969). When a zoning board acts contrary to law, the All Writs Act permits a federal court to annul and set aside such act. *See e.g. Westchester Day Sch. v. Vill. of Mamaroneck*, 417 F. Supp. 2d 477 (S.D.N.Y. 2006) (upholding a federal district court's ability to find the act of denying a special exception application by a zoning hearing board as arbitrary and capricious).

decree approved by a federal court, which resulted in the grant of a special exception.  822 A.2d at 153.  *Boeing Co.* involved a dispute between a landowner and a municipality over a legal, non-conforming adult entertainment use operated in a residential district.  *Id.* at 154.  The dispute spilled into the courts, and at the time of the settlement, lawsuits existed before the Delaware County Court of Common Pleas, the Commonwealth Court of Pennsylvania, and the United States District Court for the Eastern District of Pennsylvania.  *Id.* at 155.  A settlement was brokered and approved by United States District Court which would allow the operator to relocate the use to an industrial district without first obtaining a special exception approval from the municipality's zoning hearing board.  *Id.*  In upholding the Court-approved settlement against a subsequent challenge from the property owner adjacent to the subject industrial site, the Commonwealth Court noted that *Summit* resulted in a *de facto* grant of a variance.  *Id.* at 163, n.20.  The Commonwealth reasoned that "the *de facto* granting of a special exception resulted in even less of a departure 'from the ordained zoning pattern' than did the consent decree in *Summit*."[5]

> *Yaracs* involved a collateral attack on a federal consent order related to the zoning disputes over a residential juvenile correctional facility.  845 A.2d at 205-06.  A federal lawsuit resulted after the township, which had a pattern and practice of adversary actions directed at the specific use, refused to permit the facility to expand its legal nonconforming use.  *Id.*  The global settlement included proceedings before the zoning hearing board, which subsequent to the filing of the federal lawsuit found that zoning administrator's action of denying the permits for expansion was "inadequate and erroneous."  *Id.* at 206.  An adjacent landowner attempted to

---

[5] In *BPG Real Estate Investors*, the Commonwealth Court acknowledged that the authority of the federal court exceeded the state court's authority in resolving land use disputes.  990 A.2d at 149.  ("First and foremost, the settlement in *Boeing* was brokered and approved by a federal court, which does not labor under the same restrictions as a state trial court's entertaining statutory land use appeals.").

collaterally attack the consent decree in state court and the Commonwealth Court affirmed the rejection of this attack stating "[a]s recognized by the trial court, voiding the Agreement would necessarily void a portion of the Consent Order and thus enjoin the federally approved settlement.  As stated state courts cannot do this[.]"  *Id.* at 209.

*Local Number 93, Int'l Association of Firefighters, AFL-CIO, C.L.C., Summit, Boeing Co.,* and *Yaracs* establish that this Court has the jurisdiction to enter the Stipulation and the Stipulation is enforceable.

**(b)     The Settlement is Fundamentally Fair and Consistent with the MPC.**

(i)     *Unconventional Wells Are Legislatively Permitted as of Right by the Township.*

The Stipulation resolves the dispute over Apex's requests for special exception under the Township's zoning ordinances.  Under the Original Ordinance, the Pending Ordinance, and the Current Ordinance, Apex was permitted to develop unconventional oil and gas wells at each proposed site through special exception.  The relief sought to remedy Apex's constitutional claims falls well within the authority granted under MPC.[6]

Section 10601 of the MPC vests authority solely in the Commissioners to adopt a zoning ordinance.[7]  53 Pa. C.S.A. § 10601.  Section 10603 of the MPC requires that the adopted ordinance "shall provide for the reasonable development of minerals in each municipality."  53 Pa. C.S.A. § 10603(i).  The MPC further defines "minerals" to include "natural gas."  53 Pa. C.S.A. § 10107.

---

[6] Protect PT cites *Phoenix Resources.  Phoenix Resources* is not dispositive.  First, the relief sought pertains solely to the seven filed applications and does not bind future Commissioners' police powers to rezone any property at issue.  Second, the relief sought is well within that permitted by the MPC.

[7] Similarly, Sections 10503 and 10508 of the MPC permit the Township to enact subdivision and land development ordinances and vest jurisdiction in the Township to hear applications for preliminary and final land development plan applications.  The Stipulation requires the Township's and Board's approval because both are parties to the federal action and the relief provided under the Stipulation implicates the exclusive jurisdiction of each.

Section 10603 allows the Commissioners to enact provisions for special exception. 53 Pa. C.S.A. § 10603(c)(1). Jurisdiction exists in the Board to hear applications for special exception. 53 Pa. C.S.A. 10909.1(a)(6). The MPC constrains the Board's review of an application by limiting the Board's consideration to the "express standards and criteria" adopted by the Commissioners. 53 Pa. C.S.A. 10912.1. The Board, however, may attach "such reasonable conditions and safeguards" to an approval as it "may deem necessary to implement the purposes of the act." *Id.* If the express objective standards and criteria are shown, the courts have held that the zoning hearing board is generally obligated to reduce impacts by imposing conditions, rather than denying the exception. *See Good Fellowship Ambulance Club's Appeal,* 178 A.2d 578 (Pa. 1962) (directing the board of adjustment to authorize the proposed use of the property as an ambulance garage and to impose conditions that would reduce the health and safety concerns resulting from increased traffic); *Lower Moreland Twp. v. Shell Oil Co.*, 281 A.2d 201 (Pa. Commw. Ct. 1971) (affirming the trials court's decision to reverse the board's denial of a special exception for a gasoline station and ordering the board to grant the special exception subject to board-imposed conditions).

Pursuant to the rubric established by the MPC, "[a] special exception is not an exception to a zoning ordinance, but rather a use, which is expressly permitted, absent a showing of a detrimental effect on the community." *Greaton Props. v. Lower Merion Twp.*, 796 A.2d 1038, 1046 (Pa. Commw. Ct. 2002). By designating a use as a "special exception," the governing body has legislatively determined that the use is one that is appropriate in the zoning district and is presumptively consistent with the promotion of the health, safety and general welfare of the public. *Bray v. Zoning Bd. of Adjustment*, 410 A.2d 909, 911 (Pa. Commw. Ct. 1980); *In re Brickstone Realty Corp.*, 789 A.2d 333 (Pa. Commw. Ct. 2001). As the primary treatise on zoning in Pennsylvania states:

-12-

All uses have some adverse impact on the Community…. Accordingly, if a zoning ordinance is drawn rationally, a decision to permit a use by special exception reflects a legislative judgment that the degree of impact necessarily flowing from the use does not materially affect the public interest and will not justify a denial of the use.  The most common error of protestations and of zoning boards in special exception cases is the failure to recognize that the existence of the special exception itself represents a legislative determination that degree of impact is permissible.

ROBERT S. RYAN, PENNSYLVANIA ZONING LAW AND PRACTICE, § 5.2.6. (George T. Bisel Co., Inc. 2004).

The Pennsylvania Supreme Court has long defined a special exception as one allowable where requirements and conditions *detailed* in the ordinance are found to exist. *William Holding Grp., LLC v. Bd. of Supervisors of West Hanover Twp.*, 101 A.3d 1202, 1212 (Pa. Commw. Ct. 2014).  In considering Apex's application, the authority of the Board to act arises "'exclusively'" from the Township's zoning ordinance and the MPC.  *Markwest Libery Midstream & Resources, LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549, 555 (Pa. Commw. Ct. 2014)  (quoting *Norate Corp. v. Zoning Bd. of Adjustment of Upper Moreland Twp.*, 207 A.2d 890, 893-94 (Pa. 1965)).  Accordingly, while the Board does not have the power to require any applicant to provide specific proofs, including expert testimony or reports, beyond reports expressly specified by the Commissioners with reasonable clarity, *Markwest*, 102 A.3d at 560-64, the Board does have the right to impose additional reasonable conditions to mitigate potential impacts.  53 P.S. § 10503.

The Stipulation has two primary components.  First, the Stipulation awards special exception and preliminary land development approvals to three (3) Apex applications.  Those applications have been fully heard by the Board.  The approvals are subject to reasonable conditions imposed upon the approvals, which is clearly within the realm of authority granted under the MPC.  Second, the Stipulation resolves Apex's objections over the application of

-13-

vague and ambiguous standards and criteria[8] that Apex must meet to establish its evidentiary burden to achieve a special exception permit before the Board for its remaining applications. The four (4) applications will proceed to full hearings before the Board subject to the clarification of Apex's evidentiary burden.   Again, this relief is consistent with the statutory scheme of the MPC and the Township's Original Ordinance, Pending Ordinance, and Current Ordinance.

(ii)     *The Stipulation Imposes Fair and Reasonable Conditions to Permit the Legislatively Approved Development While Safeguarding Residents.*

The Stipulation appropriately balances Apex's rights to develop oil and gas rights (discussed above) with the Township's obligations to preserve the health, safety and welfare of its residents.   The Stipulation binds Apex to several conditions that address noise, light, emissions, and even water concerns of the residents.   Among those conditions, Apex is required to install thirty (30) foot plus sound walls around each pad site during the construction, drilling, and completion phases.   The sound walls will mitigate noise, while also mitigating light and trapping particulate emissions.   Apex will be required to provide and pay for third-party noise and air monitoring subject to the Township's oversight and enforcement powers.   Apex is obligated to eliminate staging of trucks on public roads and coordinate with the school district to ensure that truck traffic is not conflicting with bus schedules.   Apex has further agreed to not construct any in-ground impoundments or any conventional waste water interjection wells within the Township.   These conditions are imposed in addition to the litany of technologies, barriers, and policies Apex testified are already in place on its well pad sites.   The Township has extracted from Apex very real conditions that will further protect its resident's health, safety, and welfare

---

[8] The MPC requires ambiguity in zoning ordinances to be interpreted in favor of the property owner and against any implied extension of the restriction.  53 P.S. § 10603.1.  "With respect to zoning matters, 'undefined terms are given their plain meaning, and any doubt is resolved, in favor of the landowner and the least restrictive use of the land.'" *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968 (Pa. Commw. Ct. 2015) (quoting *Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*, 840 A.2d, 484, 491 (Pa. Commw. Ct. 2004)).

and Article 1, Section 27 beyond those protections afforded under the Current Ordinance and certainly the Original Ordinance.

             (iii)     *The Township Properly Balanced the Competing Claims.*

         In *Pennsylvania Environmental Defense Foundation v. Commonwealth*, 108 A.3d 140, 156-57 (Pa. Commw. Ct. 2015), the Commonwealth Court analyzed the obligations created by Article I, Section 27 of the Pennsylvania Constitution.  The Commonwealth Court held that the first clause requires the government to consider "the environmental effect of any proposed action on the constitutionally protected features."  *Id.* at 156 (citing *Robinson Twp. v. Com.*, 83 A.3d 901, 950-51 (Pa. 2013) (plurality opinion)).  The Court stated the Article I, Section 27 seeks to place "policymakers" in the "position of 'weighing conflicting environmental and social concerns.'"  *Id.* (citing *Payne v. Kassab*, 312 A.2d 86, 94 (Pa. Commw. Ct. 1973)).

         The Commissioners addressed Article 1, Section 27 through adoption of the Current Ordinance.  The propriety of unconventional oil and gas development or adoption of the Current Ordinance under Article 1, Section 27 is not an issue properly before this Court, the state court, or the Board presently.  Because Protect PT is not the affected landowner, the MPC requires Protect PT's validity challenges to be made first to the Board.  53 P.S. §§ 10909(a)(1); 10916.1(b).  That has not happened.  In *Dore v. Zoning Hearing Bd.*, 587 A.2d 367, 370 (Pa. Commw. Ct. 1991), a homeowner appealed a zoning hearing board's denial of a permit to operate a business in a residential district.  The challenged ordinance permitted certain home businesses to be operated in residential districts under limited circumstances, none of which were applicable to the homeowners' circumstances.  *Id.* at 368-69.  The Court held that "[t]he procedures set forth in Section 1004 [now Section 10919.16 of the MPC] are the exclusive means of making constitutional challenges to provision of zoning ordinances."  *Id.* at 370; *see Borough of West Mifflin v. Zoning Hearing Bd. of the Borough of West Mifflin*, 452 A.2d 98, 99

(Pa. Commw. Ct. 1982) ("Moreover, in planning cases, the attacking party, in raising challenges to ordinance validity grounds, must pursue the procedures set forth in Section 1004 of the Pennsylvania Municipalities Code . . . .").

The Commissioners and the Board further addressed the health, safety, and welfare and Article 1, Section 27 rights of their citizens by imposing upon Apex a series of conditions protecting and monitoring noise, light, sound, emissions, and water.  Again, the conditions and interpretations are within the authority of the Board to impose in implementing the will of the Commissioners as expressed through the objective standards and criteria in the zoning code. Moreover, the Stipulation avoids a *de facto* exclusionary situation,[9] which Protect PT appears to be trying to create.  The Stipulation represents a reasoned and fair balance of the competing interests, including the health, safety, welfare, and environmental rights recognized under the MPC and Article 1, Section 27.

### (c)     The Township and the Board Are Authorized to Enter the Stipulation.

Pennsylvania law favors settlement.  *Summit*, 411 A.2d at 464.  Penn Township is a township of the first class.  Under Pennsylvania law, Penn Township has rights to sue and be sued.  53 P.S. § 56501.  As discussed *supra* Part II.A, Pennsylvania law permits the Township to enter into a settlement which results in essentially the grant of a variance or *of a special exception*.  *See Summit*, 411 A.2d at 464 (granting a *de facto* variance); *Boeing Co.*, 822 A.2d at 161 ("Because court-approved settlements of zoning cases are lawful, we must recognize such settlements as being distinct from zoning hearing board [special exceptions][10]; even though a

---

[9] "A de facto exclusion of a legitimate use is established where an ordinance appears to permit the use but imposes unreasonable restrictions which, when applied, effectively prohibit the use throughout the municipality."  *Borough of Edgewood v. Lamanti's Pizzeria*, 556 A.2d 22, 22, 24 (Pa. Commw. Ct. 1989).

[10] The Commonwealth Court used the term "variances" and mentioned Section 10912 of the MPC which was repealed in 1988—fourteen years before the decision in *Boeing Co*.  Section 10910.2 addresses the zoning hearing board's jurisdiction over variances.  53 P.S. § 10910.2.  The Commonwealth Court, however, stated that the zoning code at issue permitted adult entertainment uses in an industrial district as a special exception.  822 A.2d at 154-55;

judicial settlement may result in a departure from the ordained zoning pattern, that kind of departure falls within the court's jurisdiction, not the board's jurisdiction.").

   *Becker v. Zoning Hearing Board of the Borough of Sewickley*, 874 A.2d 1270 (Pa. Commw. Ct. 2005), does not compel a contrary conclusion.  *Becker* involved a dispute regarding the denial of a variance application.  The trial court approved a consent order between the landowner and the municipality without the zoning hearing board's participation and the board sought to intervene.  The Commonwealth Court found that "the real issue in this case is whether or not the [b]oard was entitled to participate in the settlement of the appeal as a party."  *Id.* at 1274.  The Court concluded that the zoning hearing board had standing to participate in the appeal.  *Id.* at 1275.  The Commonwealth Court vacated the settlement "because the [b]oard was precluded from participating and approving the purported settlement between the Beckers and the Borough" and remanded to allow the board's "full participation."  *Id.*

   *Becker* supports approval.  As reflected in the Stipulation, the settlement was approved by the Board and the Board's participation in the settlement was expressly sanctioned by *Becker*.  Accordingly, the Stipulation reflects full participation by the municipality.

   **(d)**  **The Stipulation Comports with Process.**

   Due process is a "flexible concept" imposing "only such procedural safeguards as the situation warrants." *In re McGlynn*, 974 A.2d 525, 532 (Pa. Commw. Ct. 2009); *see also LaFarge Corp. v. Ins. Dep't*, 552, 735 A.2d 74, 78 (Pa. 1999) ("It is axiomatic that due process is flexible and calls for different procedural protections in different situations.").  In the case of constitutionally adequate process for the public, the examination starts at the implicated statutory scheme.  That is, due process is "a function of a statutory provision," not the other way around.

---

163, n. 20.  We presume that the reference to Section 10912 asserted by the Commonwealth Court was to Section 10912.1 which addresses the zoning hearing board's jurisdiction over special exceptions.

*See Falker v. Lower Windsor Twp. Zoning Hearing Bd.*, 988 A.2d 764, 769 (Pa. Commw. Ct. 2010) (noting that "procedural safeguards to protect the public's constitutional rights" take "the form of express statutory provision").

Initially, this is a litigation settlement agreement as permitted under the MPC and Pennsylvania case law.  Nothing in the MPC compels or requires a public hearing regarding the terms of the settlement.   Indeed, in *Summit* and *Yaracs*, the settlement agreements were presented in the same fashion as here, *i.e.*, through public meeting with the opportunity for public comment.  *Summit*, 411 A.2d at 1265; *Yaracs*, 845 A.2d at 203.  Pennsylvania courts have also rejected the notion that the MPC requires additional process merely because objectors exist. For example, in *Miravich v. Twp. of Exeter*, 6 A.3d 1076, 1079 (Pa. Commw. Ct. 2010), the Commonwealth Court found that the MPC "places virtually no procedural requirements on a Board of Supervisors considering subdivisions and land development proposals."  *Id.*  Similarly, in *Whitehall Manor, Inc. v. Planning Comm'n of City of Allentown*, 79 A.3d 720, 733 (Pa. Commw. Ct. 2013), the Commonwealth Court confronted the procedural due process claims of two (2) objectors challenging the approvals of a preliminary and final land development plan as well as a subdivision plan for the Allentown Arena.  The approvals issued approximately one month after the submission of the developer's application and occurred after a single public meeting on the application.   79 A.3d at 723.   The objectors asserted a litany of procedural arguments including that the approval process was "flawed, hurried, and carried out in a manner that prevented [o]bjectors' participation."  *Id.* at 730.  The objectors also complained they had received only two (2) documents pursuant to a Pennsylvania Right-to-Know Law ("RTK") request and that the approving agency had elected the option to extend its RTK Response for thirty (30) days as permitted under the RTK.  *Id.* at 732.  The Commonwealth Court, relying on *Miravich*, found no due process violation existed because the governing body followed the

-18-

procedures set forth in the MPC, the Sunshine Act, and its own code. *Id.*; *see also Smith v. Township of Richmond*, 54 A.3d 404, 406 (Pa. 2013) (approving a land use settlement voted on at a public meeting).  Similarly, the Township and Board have also compiled with their procedures.

Moreover, the Pennsylvania courts have stated that the "'decisive event' for purposes of review was the settlement of a judicial proceeding under court supervision as opposed to review of action by Board." *T.H. Properties, L.P. v. Upper Salford Twp. Bd. of Sup'rs*, 970 A.2d 495, 500 (Pa. Commw. Ct. 2009) (quoting *Boeing Co.* 822 A.2d at 162). "[R]eview of the issues arising during the process leading to the court order are appropriately addressed to the court overseeing the case's resolution—review properly 'falls within the court's jurisdiction, not the board's jurisdiction.'" *Boeing Co.*, 822 A.2d at 162.  Here, as evidenced from their website, Protect PT was aware of the federal lawsuit since essentially its inception. *See* Exhibit B.  Counsel for Protect PT was advised of the possibility of a settlement as early as November 23, 2016.  Counsel was also provided a copy of the Joint Motion to Approve Consent with the fully executed Stipulation within twenty-three minutes of the filing with this Court. *See* Exhibit D.  Protect PT has had ample opportunity to intervene to assert objections and apparently is trying to assert objections[11] inappropriately under the guise of an amicus filing.  Here, all the necessary process has been afforded.

WHEREFORE, for the reasons stated, Apex respectfully requests the Court to deny the relief sought under the Amicus Brief and approve the Consent Judgment and Stipulation.

---

[11] A fair read of the Amicus shows that Protect PT is patently partisan and not a proper amicus party. *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D. N.J. 1985).  Even if Protect PT moved to intervene and intervention was granted, Protect PT's consent is not necessary for the Parties to enter a fair settlement. *Local Number 93, Int'l Association of Firefighters, AFL-CIO, C.L.C.*, 478 U.S. at 529 (explaining that an intervenor does not have the power to block a decree merely by withholding consent.)

Date:  December 16, 2016

Respectfully submitted

/s/ *Jeffrey G. Wilhelm*
Jeffrey G. Wilhelm
Pa. ID #209135
Aleksandra V. Williams
Pa. ID #309779
Reed Smith LLP
Reed Smith Centre, 12th Floor
225 Fifth Avenue
Pittsburgh, PA  15222
Tel:  412.288.3006
Fax:  412.288.3063
jwilhelm@reedsmith.com
avwilliams@reedsmith.com

Attorneys for Plaintiff Apex Energy (PA) LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of December, 2016, a copy of the foregoing was filed with the clerk of the court for the United States District Court for the Western District of Pennsylvania by using the CM/ECF system.  I further certify that all parties and/or counsel in the case are registered CM/ECF users to the best of my knowledge, understanding and belief, and that service will be accomplished by the CM/ECF system on the same.


*/s/ Jeffrey G. Wilhelm*
Jeffrey G. Wilhelm